**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| **CHARLOTTE P. BORGENS** | ) | **CASE NO. 04-00492** |
| | ) | |
| **Debtor.** | ) | |
| **WELLS FARGO BANK MINNESOTA** | ) | |
| | ) | |
| **Movant** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLOTTE P. BORGENS** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM DECISION**

The matter before the Court is the First Notice of Default and Notice of Termination of Automatic Stay filed by Wells Fargo Bank Minnesota National Association c/o American Home Mortgage Servicing, Inc. (hereafter "Wells Fargo") filed with this Court on December 29, 2008 and the Objection thereto filed by the Debtor.  After several continuances, a final evidentiary hearing was held on May 11, 2009, after which counsel for the parties made oral arguments and the Court took the matter under advisement.  Counsel for the Debtor, the Debtor herself and counsel for Wells Fargo filed written authority in support of their respective positions and the matter is now ready for decision.  For the reasons stated below, this Court will grant Wells Fargo deferred relief from the automatic stay effective on September 1, 2009 if it has not been paid in full by such date.

FINDINGS OF FACT

The Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 15, 2004. According to the Debtor's Schedules filed on March 30, 2004, the Debtor owns real estate located at 1318 Richmond Road in Amissville, Virginia valued at $214,100 with secured claims of Culpeper Community Development Corp. and Option One of $7,000 and $85,000 respectively. The Proof of Claim filed by Option One Mortgage Corporation on April 13, 2004 shows a secured claim of $84,423.07. An Amended Proof of Claim filed by Wells Fargo Bank on December 15, 2004 shows a secured claim of $82,043.00 as of March 15, 2004, with pre-petition arrears of $6,070.33. No Proof of Claim has been filed by Culpeper Community Development Corp. On April 12, 2005, Wells Fargo Bank c/o Option One Mortgage Corp. filed a Motion for Relief From the Automatic Stay regarding the above referenced property. In said Motion, Wells Fargo averred that there was no equity in the property and further alleged that the total amount due under the Deed of Trust, as of April 7, 2005, including attorney's fees and costs, was approximately $88,667.67. According to the Arrearage Worksheet attached to the Motion, the total arrearage through April 1, 2005 was $3,617.58. Counsel for the Debtor filed a response to the Motion asserting that the Debtor had made some payments, denied the allegation that there was no equity in the property and asked that the motion be dismissed. No certification was filed by either party in accordance with the Court's Pre-Hearing Order entered April 13, 2005, however it appears that all information required by that Order was provided in the Motion itself or the exhibits attached thereto. On May 5, 2005, the day after the scheduled hearing on the matter, a Consent Order Modifying the Automatic Stay was entered which provided that the Debtor was to make certain monthly payments to Wells Fargo, including $431.04 for post-petition arrears through October 2005 and

$918.77 for the regular monthly payment. If the Debtor failed to make such payments, the Debtor was to be deemed in default of the Order and Wells Fargo was authorized to file an affidavit of default with the Court. The Order further provided that if the Debtor failed to cure the default by paying the amount due within fifteen (15) days, Wells Fargo was free to commence a foreclosure proceeding against the Debtor's property. The Order also provided that upon the filing of the third affidavit of default, the automatic stay would immediately terminate and Wells Fargo would be free to commence a foreclosure proceeding against the property.

On December 27, 2005, the Debtor filed a Motion to Refinance Real Property requesting that she be allowed to refinance her existing mortgage and obtain a new loan from 1st Principle Mortgage at a lower interest rate. The matter was scheduled for hearing on February 2, 2006. On February 3, 2006, an Order was entered allowing the Debtor to refinance her real estate on the condition that Option One, Culpeper Community and the Chapter 13 Trustee be paid from the proceeds at settlement.

On September 20, 2006, Wells Fargo filed its First Notice of Default indicating that the Debtor was in default for a total of $1,056.76, to which an objection was filed by the Debtor on October 5, 2006. On October 6, 2006, counsel for Wells Fargo filed a notice of intent to commence foreclosure proceedings as the Debtor failed to comply with the terms of the Order entered May 5, 2005 because the Debtor did not cure the Notice of Default. On October 10, 2006, counsel for the Debtor then filed a notice of hearing on her objection and scheduled the matter for hearing on November 2, 2006. A hearing was held and the matter was continued to January 4, 2007, at which time counsel indicated that the Notice would be withdrawn. An Order withdrawing the Notice of Default was entered on January 17, 2007 as the Debtor had cured the

Notice of Default.

On May 21, 2007, Wells Fargo filed another "First Notice of Default" alleging a default of $957.00 by the Debtor. This Notice was withdrawn by Order entered June 4, 2007. Then, on December 29, 2008, Wells Fargo filed yet another "First Notice of Default," the matter currently pending before the Court, asserting that the Debtor was in default for four (4) regular monthly payments, for a total of $3,894.15. Counsel for the Debtor filed an objection on January 13, 2009 noting that the Debtor had made some of these payments and that the Debtor was concerned that payments were not being credited correctly. In the Order recusing the matter to the undersigned Judge, the matter was then scheduled for hearing on February 9, 2009. A hearing was held and the matter was continued to March 9, 2009 by an Order entered February 24, 2009, an order prepared and endorsed as being requested by counsel for the Movant. On March 9, 2009, a hearing was held and the matter was continued to April 13, 2009 by an Order, again prepared and endorsed as being requested by counsel for the Movant, which was entered March 10, 2009. In the meantime, on March 28, 2009, the Debtor filed a second Motion to Refinance Real Property, which asserted that Washington Capital Financial Corp. was ready to "proceed immediately upon approval of this Court." Agreed orders endorsed by all parties in interest waiving notice of this Motion and granting such Motion were entered on March 31, 2009 allowing the Debtor to refinance her real estate on the condition that she pay off Wells Fargo, Culpeper Community and the Trustee. At the hearing on April 13, 2009, counsel for the Debtor reported that the refinance had not yet occurred, but expected that it would occur within two to three weeks and asked for a continuance of the matter. Counsel for the Debtor also noted that the Debtor was willing to sell the property to pay off Wells Fargo in the event the refinance did

4

not go through.  At this hearing, counsel for Wells Fargo acknowledged that there was no dispute that there was equity in the property, but noted that no payments had been made by the Debtor since the filing of the current Notice of Default.  The undersigned preliminarily denied the Notice of Default and the matter was continued for a final hearing on May 11, 2009.  An Order to such effect prepared and endorsed as requested by Debtor's counsel and "Seen" by Movant's counsel was entered by the Court on April 14, 2009.[1]

On May 11, 2009, an evidentiary hearing was held.  At the hearing, counsel for the Debtor noted that the Debtor had not been able to refinance her home yet.  A letter dated May 11, 2009 from Lavonne Adkins, Public Accountant, was admitted into evidence on behalf of the Debtor.  The letter stated that the refinance on the Debtor's home had been approved but not finalized due to the fact that the Debtor has not been able to obtain a permanent paid position.  Ms. Adkins also indicated that the residence has been on the market for sale and that there are three interested parties in the property.  Ms. Adkins requested that the Court grant an extension of time and/or delay the order to foreclose to allow the Debtor some time to either refinance her home upon finding permanent employment or to complete the sale of the residence.  The Debtor testified at the hearing that she previously had no understanding that the loan was going to be delayed and that the lender would require her to have full time employment.  Ms. Borgens indicated that she was not currently employed, but had two interviews scheduled.  She also testified that there were three people interested in purchasing the property and thought the sale could be accomplished within sixty to ninety days.  Ms. Borgens further testified that the

---

[1] Each of the three Orders continuing the hearing on the Notice of Default and the objection thereto provided that the automatic stay would remain in effect pending further order of the Court.

2008 county assessment of the fair market value of the property for real estate tax purposes was $363,800 and that the interested buyers were willing to pay $250,000 - $260,000.  Counsel for the Debtor asked the Court for some reasonable amount of time to accomplish either a refinance or sale of the property under the equitable powers of the Court.  Counsel for Wells Fargo took the position that it had already given the Debtor enough time to resolve this matter and asked that the Consent Order be enforced so that it can proceed with foreclosure on the property.

    The Court took the matter under advisement and allowed the parties additional time to submit written authority in support of their positions.  On May 20, 2009, counsel for the Debtor filed a Memorandum in support of her request for modification of the Order.  On May 21, 2009, the Debtor herself filed a letter requesting that the Court allow her some additional time to cure the default.  On May 26, 2009, counsel for Wells Fargo filed a Response in Opposition to the Debtor's Memorandum.

    Counsel for the Debtor represents that the property subject to the Wells Fargo deed of trust is insured and the creditor has not challenged that statement.  Counsel for Wells Fargo represents that the loan is now over $7,000 in arrears.  The Court finds that such loan is materially delinquent and that no payments have been made by the Debtor since the filing of the present Notice of Default on December 29, 2008.  Nevertheless, the Court also finds that the property subject to the deed of trust in question is worth more than twice the loan's current payoff and that Wells Fargo is adequately protected against loss even if foreclosure were to be deferred for several more months, a finding which the Court perceives to be one which such bank would not dispute.  The Court further finds that the loan arrearage dealt with in the May 5, 2005 Consent Order was cured by the Debtor and that the cumulative default which is the subject

of the pending Notice of Default concerns the Debtor's failure to make subsequent regular loan payments. Finally, the Court also finds that the circumstances which exist now are materially different than those which existed when the Consent Order was agreed to by the parties and entered by the Court, principally that the Debtor has lost her job which provided her with the income to make such regular loan payments.

CONTENTIONS OF THE PARTIES

In her Memorandum, counsel for the Debtor requests modification of the Order to defer the implementation of the Order allowing Wells Fargo to foreclose on the Debtor's residence. Counsel cites to the equitable powers of the Court as set forth in 11 U.S.C. § 105(a) in support of her position. Counsel also cites *Metropolitan Life Ins. Co. v. Olsen (In re Olsen)*, 861 F.2d 188 (8th Cir. 1988), as authority for the proposition that bankruptcy courts have general authority to change the terms of their own orders when equity so requires when "a showing of special circumstances, such as a change of condition, justifies relief from a stipulation to prevent manifest injustice."[2] Counsel also distinguishes the facts in the instant case from the facts in *In re Atlas Carriers, Inc.*, No. 4:02-BK-19878, 2003 WL 21397832 (Bankr. E.D. Ark. March 6, 2003), where the Court held that the situation did not warrant relief from the terms of an order as the circumstances existed at the time the original order was entered into and had not arisen after the execution of the order. Debtor's counsel notes that the Order at issue here was entered

---

[2] *Olsen* involved a situation where the debtors petitioned the court for modification of a Stipulation entered into between the debtors and a creditor. In the instant case, however, the Debtor has not filed a specific motion requesting the Court to modify or vacate the Order at issue.

almost four years ago, that the Debtor has been making payments under her Chapter 13 Plan and that Wells Fargo is the only unpaid creditor in the case.  Counsel further argues that in May of 2005, no one could have predicted the current economic situation, nor the fact that the Debtor would be temporarily unemployed.  Counsel also asserts that in May of 2005, the Debtor's real estate consisted of 1.5525 acres.  The property is now comprised of 2.1839 acres due to a boundary line adjustment, which increased the value of the Debtor's property.  Counsel argues that in the event of foreclosure, Wells Fargo could potentially be receiving a windfall of half an acre of land.  Counsel for the Debtor notes that this real estate has been in the Debtor's family for several generations and that the Debtor has significant equity which she wishes to preserve in order to have the "fresh start" after the filing of this bankruptcy.  Counsel argues that it would be a manifest injustice and inequitable if, after working through a chapter 13 bankruptcy since 2004, the Debtor were to lose her most valuable asset.  Therefore, the Debtor asks the Court to modify the Order and defer entry of any Order for ninety days to allow her to proceed with refinance or sale of the property.

       The Debtor herself also filed a letter in support of her request that the Court not allow the foreclosure to proceed at this time.  The Debtor claims that she did not want to sign the Order back in 2005 and that she was having mental problems at the time due to several personal issues involving her ex-husband.  The Debtor also represents that she sent a hardship letter to American Home Mortgage twice requesting help from them and that she also sought help from the Hope Program.  Finally, Ms. Borgens requests additional time to obtain permanent

employment and get the loan to refinance the property or to allow her to sell her home.[3]

Wells Fargo asserts that the Debtor willingly entered into an agreed Order to pay back the arrears that had accrued since the bankruptcy petition date. The Movant filed a Notice of Default in accordance with the terms of the Order and notified the Debtor that she was due and owing for four (4) post-petition payments for a total default of $3,894.15. The Debtor's opposition to the Notice states that Debtor made two payments in September and October, but both of these payments were accounted for and applied by the Movant prior to the filing of the Notice of Default. The Debtor informed the Movant that a third party was willing to refinance the property and in good faith the Movant refrained from prosecuting the Notice of Default. The hearing on this Notice was continued three times to allow the Debtor the opportunity to submit an order to the Court allowing refinance. The Debtor is unable to obtain financing with which to refinance the loan after having been given more than ample time to obtain financing. During this time, the Movant has not received any payments from the Debtor. Therefore, the Movant requests that the Court enter an order lifting the stay so that the Movant can proceed with a foreclosure action.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Determination of a motion to terminate, annul or modify the automatic

---

[3] These matters are either ones which already existed at the time of the May 11 hearing and could have been raised at that time or simply reiterate requests made at such hearing. Accordingly, the Court does not base its decision on any statements made in such letter.

stay is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(G).  The Court concludes also that an effort to enforce an order resolving a motion to modify the automatic stay, or a request to modify or vacate such an order, is likewise a "core" bankruptcy matter.

At this point there appears to be no serious dispute between the parties that the Debtor is in default of her regular payment obligations under the loan which is secured by the deed of trust in favor of Wells Fargo.  Accordingly, under the terms of the Consent Order, without considering anything else, Wells Fargo is entitled to relief.  However, there in fact is something else here which in justice must be considered.  Although the Debtor has not filed a motion pursuant to Bankruptcy Rule 9024 seeking relief from the terms of the May 5, 2005 Consent Order, her counsel expressly sought such a result in her post-hearing Memorandum.  Although counsel for Wells Fargo in his reply asserts that the Debtor has already been provided ample time in which either to effect a refinance or sale of her property and that it ought to be permitted to proceed to foreclosure without further delay, he raised no express objection to the debtor seeking an equitable modification of the Consent Order by argument upon her Objection to the pending Notice of Default, in other words, by means other than a motion as Rule 9024 contemplates.  Even if such an objection had been made, this Court still would have the discretion, so long as Wells Fargo is adequately protected and not ultimately prejudiced by doing so, to grant the Debtor an opportunity to file and prosecute such a motion even at this point.  In order to reach an expeditious resolution of the dispute before it, the Court will treat the Debtor's Objection, as supplemented by her counsel's post-hearing written argument, as such a motion.

While it would be unfair to delay Wells Fargo indefinitely from enforcing its rights when the Debtor is unable to make payments upon her mortgage, her counsel expressly

disclaims any such request, but does seek a reasonable period of time to permit her either to obtain new employment which would enable her to close on her refinancing loan and pay off the existing liens against her property or to sell her property at a price significantly below its current tax assessed value but also significantly more than what she owes.  The Court agrees that under the circumstances presented here it would be an injustice to permit a foreclosure sale to proceed immediately which might well result in a loss by the Debtor of most, if not all, of her substantial equity in her home, a residence which she testified has been in her family for several generations.  There has been a substantial change since the time of the May 5, 2005 Consent Order in the Debtor's circumstances, one which the parties had no reason to anticipate at such time, namely, the loss of her job which provided her with the income to make her payments on her mortgage.  Furthermore, the current national economic conditions to which this region is clearly not immune with widespread unemployment and a commonly acknowledged financial system crisis are far more difficult than was generally anticipated even twelve months ago, much less four years ago when the Consent Order was agreed to by the parties and approved by this Court.

It is true that the Debtor has already had more time to obtain her refinancing than she represented would be needed in her Motion to Refinance Real Property which was filed on March 28.  It is also true, however, that, according to the Debtor's unchallenged testimony, she was not made aware that her refinancing commitment would be subject to a condition that she obtain new employment before loan closing.  The Debtor testified at the May 11 hearing that she was diligently seeking new employment and had job interviews scheduled.  She further testified that if she could not refinance and had to sell her home in order to save her equity, she had three

interested parties standing by and that she believed a sale could be effected within sixty to ninety days.  It has been almost a month since the date of that hearing.  The Court is satisfied that to give the Debtor until the end of August this year to effect one or the other of such transactions which would repay Wells Fargo and the other lien holders against her residence in full is equitable and not truly prejudicial to such mortgagee as long as appropriate casualty insurance for its protection is maintained and the Debtor continues to maintain such property in its current physical condition.

      The Court concludes that it is empowered to make this ruling upon the authority of Federal Rule of Civil Procedure 60(b)(6), incorporated into Bankruptcy Rule 9024, which authorizes the Court to grant relief from a final order "upon any other reason that justifies relief," as well as 11 U.S.C. § 105(a), which provides that no provision of title 11 shall preclude a bankruptcy court, even "sua sponte, from taking any action . . . necessary . . . to prevent an abuse of process."  While it is exceedingly rare for this Court to make a ruling relying in part upon its § 105(a) authority, it concludes that permitting Wells Fargo to proceed immediately to foreclosure under the extraordinary circumstances presented here would constitute an abuse of process.  The most important of those circumstances are (i) the major changes which have occurred since the entry of the Consent Order which exceed anything the parties might have reasonably anticipated at that time, and (ii) the large amount of equity appearing to exist in the Debtor's residence property.  That substantial equity not only provides a very comfortable margin of adequate protection to the lien holders, but also signals the extent of the injustice which would be suffered by the Debtor if the foreclosure were permitted to proceed apace without according to her a further reasonable opportunity to salvage a significant portion of it to make a post-bankruptcy

"fresh start" a realistic and practical possibility.  *See generally Olsen*, 861 F.2d at 189.

## CONCLUSION

Based on the preceding, this Court concludes that a sound legal and equitable basis exists to grant deferred relief to Wells Fargo from the automatic stay to proceed to foreclosure, but that relief shall not be effective until September 1, 2009, and then only if it has not been paid in full by such date.  An order to such effect shall be entered contemporaneously herewith.

This the 9th day of June, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE